# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 14, 2026

Lyle W. Cayce
Clerk

No. 25-30135

—————————

Ternell L. Brown,

*Plaintiff—Appellee*,

*versus*

Matthew Wallace, *in his individual capacity*; Katherinne F. Alvarado-Cruz; Troy Lawrence, Jr., *in his individual capacity*,

*Defendants—Appellants*.

———————————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:23-CV-1313

———————————————————————

Before Richman, Engelhardt, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Three members of the Baton Rouge Police Department, Matthew Wallace, Troy Lawrence, Jr., and Katherinne Alvarado-Cruz, were involved in the arrest and subsequent strip and body cavity search of Ternell Brown. The officers have appealed the district court's denial of their 12(b)(6)

———————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-30135

motions to dismiss on qualified immunity grounds. We affirm in light of the limited record before us and remand to permit discovery and further proceedings as appropriate limited to the qualified immunity issues.

**I**

The following factual allegations are taken from Ternell Brown's Second Amended Complaint (Complaint).[1] Detective Matthew Wallace and Officer Troy Lawrence, Jr., two members of the Baton Rouge Police Department's Street Crimes Unit, were patrolling the 2500 block of Plank Road, Baton Rouge, Louisiana, when Detective Wallace "elected to conduct a traffic stop" of Brown's vehicle. After Brown and her husband "complied by stopping" the vehicle in response to the activation of police lights, Detective Wallace "ordered Mrs. Brown and her husband to exit the vehicle." Officer Lawrence arrived on the scene within fifteen seconds to assist Detective Wallace. Officer Lawrence, who was "immediately next to the passenger side door when" Brown exited, instructed "Brown to place her hands behind her back[,] . . . placed [her] in handcuffs," and ordered her "to come stand beside his vehicle." Officer Lawrence "guard[ed] Mrs. Brown to allow Wallace" to search "the vehicle without Mrs. Brown or her husband's consent" and without a warrant.

Detective Wallace's search of Brown's vehicle uncovered "several bottles of prescription medication belonging to Mrs. Brown," including one that contained "multiple prescriptions in the same bottle." Brown "informed Lawrence and Wallace at least four times that she was in lawful possession of the pills . . . and offered to show proof." Officer Lawrence and

---

[1] *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments.").

2

No. 25-30135

Detective Wallace responded by informing Brown that "she was not allowed to carry multiple prescriptions in the same bottle," and they refused to "view[] her prescriptions while still on-scene." Detective Wallace told Brown that they were unable to determine if the prescription drugs were "something [she] bought off the streets," and he and Officer Lawrence told her that "a judge would sort it out." Officer Lawrence then "falsely" told Brown that she would be taken to jail for possession of a firearm with a controlled dangerous substance.

Officer Lawrence and Detective Wallace ordered Brown into a Baton Rouge Police Department (BRPD) vehicle driven by Officer Doe. Officer Doe "forcibly" transported Brown to the Brave Cave, an "unmarked BRPD facility," because they "suspected she might be involved in illegal drug activity." Officer Lawrence and Detective Wallace drove separately, meeting Brown and Officer Doe there.

The Brave Cave was "a warehouse that the Street Crimes Unit [had] adopted as their home base over the past several years . . . where BRPD [took] suspects to interrogate them, gather intelligence, and attempt to 'flip' them to begin cooperating with BRPD." The Brave Cave was "not a jail or detention facility," and "no correctional staff work[ed]" there. It "was closed" a few months after the events at issue here when "reports of torture committed by members of the Street Crimes Unit became public." Brown was held at the Brave Cave "for over two hours" so the officers could investigate whether there was probable cause to arrest her for a drug offense. She was not brought to the Brave Cave to be processed "for eventual transfer to the East Baton Rouge Parish Prison . . . [but] to be further searched and questioned."

Detective Wallace and Officer Lawrence instructed Officer Katherinne Alvarado-Cruz to conduct "Strip and Body Cavity searches [of

3

No. 25-30135

Brown]." Heeding their "request," Officer Alvarado-Cruz then "examined Mrs. Brown, forc[ing] her to spread her vagina and buttocks for inspection, and examined her vagina using a flashlight." None of the officers had "a warrant . . . or consent to conduct" the strip or body cavity search of Brown. The officers released Brown from the Brave Cave without charge after concluding that she "was not hiding a weapon or contraband in her rectum or vagina." There is no footage of the events at the Brave Cave because the officers "intentionally turned off their body-worn cameras."

Detective Wallace, Officer Lawrence, and Officer Alvarado-Cruz subjected Brown to the strip and body cavity search pursuant to BRPD policy, which states in pertinent part:

> III. Strip Search
>
> A. Arrestees will not be subjected to strip searches unless the officer has articulate [sic], reasonable suspicion that this particular arrestee may have weapons or contraband on his person. Reasonable suspicion will be based on the following factors:
>
>> 1. The nature of the offense charged.
>>
>> 2. The arrestee's appearance and conduct.
>>
>> 3. The circumstances of the arrest.
>>
>> 4. The arrestee's prior record . . . .
>
> C. Strip searches may be conducted on non-arrestees based on individualized articu[l]able reasonable suspicion to frisk, probable cause to search, consent, or a court order.
>
> 1. Reasonable suspicion and probable cause will be based upon the same factors listed in III A.

Brown attempted to file a complaint about the strip and body cavity search at BRPD headquarters but was "told that the officers had done

4

nothing wrong." She then filed the instant lawsuit asserting, among other things,[2] a violation of 42 U.S.C. § 1983 for both an unreasonable search and an unreasonable seizure under the Fourth Amendment against Detective Wallace, Officer Lawrence, and Officer Alvarado-Cruz. Specifically, she alleges that Detective Wallace, Officer Lawrence, and Officer Alvarado-Cruz violated her constitutional right to be free from unreasonable searches by subjecting her to a strip and visual body cavity search inside the Brave Cave, and violated her constitutional right to be free from unreasonable seizure by forcibly transporting her to the Brave Cave and holding her there for hours.

Brown also sought to enjoin all defendants from implementing the BRPD policy outlined above. Brown's claim for injunctive relief and another case involving the same BRPD policy were consolidated before a different judge in the Middle District of Louisiana "for the limited purpose of reaching a determination" of "whether the BRPD's strip search policy regarding non-arrestees is constitutional."[3] That judge held Section III.C of the BRPD policy, which applies to non-arrestees, unconstitutional on its face.[4] That ruling is not involved in this appeal, nor is it at issue here. Brown was an "arrestee" at the time of the strip and body cavity search. "An arrest occurs when, 'in view of all [of] the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"[5] After

_____

[2] Brown also asserted *Monell* liability against the city and state-law claims against all defendants. Those claims are not at issue.

[3] *Lee v. Lawrence*, Civil Action 23-1229, Civil Action 23-1313, 2024 WL 3385644, at *1 (M.D. La. July 12, 2024).

[4] *Id.*

[5] *United States v. Massi*, 761 F.3d 512, 522 (5th Cir. 2014) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)); *see* La. Code Crim. Proc. art. 201 ("To constitute arrest there must be an actual restraint of the person. The restraint may be

No. 25-30135

Wallace stopped Brown's vehicle and ordered Brown and her husband out of the vehicle, Lawrence placed her in handcuffs. He "guard[ed] Mrs. Brown to allow Wallace to conduct his search [of the vehicle] more efficiently." Lawrence then informed Brown she was being taken to jail, which was actually the Brave Cave, for possession of a firearm with a controlled dangerous substance. Brown remained in handcuffs while BRPD Officer Doe transported her to the Brave Cave in a BRPD vehicle. Brown was then held at the Brave Cave for over two hours as a "detainee." Under these circumstances, a reasonable person would not have believed she was free to leave. Nor did Brown, the person involved here. Brown was therefore an "arrestee" under the circumstances at issue.[6]

Detective Wallace, Officer Lawrence, and Officer Alvarado-Cruz each filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, raising the defense of qualified immunity. The district court considered each motion separately and denied each officer qualified immunity. Detective Wallace, Officer Lawrence, and Officer Alvarado-Cruz have each timely appealed.

## II

"[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291."[7] But this court is "restricted to

---

imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.").

[6] *Cf. Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996) (stating that "arrestees [are] a subset of pretrial detainees").

[7] *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) ("The denial of a motion to dismiss predicated on a defense of qualified immunity is a collateral order capable of immediate review.").

6

determinations 'of question[s] of law' and 'legal issues,' and [does] not consider 'the correctness of the plaintiff's version of the facts.'"[8]   We "review[] de novo the district court's denial of a motion to dismiss on qualified immunity grounds or for failing to state a claim, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff."[9]   "In doing so, we . . . do not accept conclusory allegations, unwarranted factual inferences, or legal conclusions."[10]   This "court also has jurisdiction to review the sufficiency of a complaint on interlocutory appeal when that issue is 'inextricably intertwined' with the denial of qualified immunity."[11]

## III

"The defense of qualified immunity protects state officials from civil suit and liability when they could have reasonably believed that their actions were legal."[12]   "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[13]   "[P]roperly applied, it protects all but the plainly incompetent or those who knowingly violate the law."[14]   "When a defendant invokes

---

[8] *Club Retro, L.L.C.*, 568 F.3d at 194 (first alteration in original) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005)).

[9] *Bevill v. Fletcher*, 26 F.4th 270, 274 (5th Cir. 2022) (citing *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)); *see also Club Retro, L.L.C.*, 568 F.3d at 194.

[10] *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024) (citing *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020)).

[11] *Bevill*, 26 F.4th at 274 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009)).

[12] *McKay*, 117 F.4th at 746.

[13] *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

[14] *Id.* (quoting *al-Kidd*, 563 U.S. at 743).

qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."[15] "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[16] A plaintiff "must show that (1) the official violated a statutory or constitutional right and (2) the right was clearly established at the time of the conduct."[17] This court "may address either prong first,"[18] and if either condition is lacking, the defendants are protected by qualified immunity.[19]

We address the claims of qualified immunity for Detective Wallace, Officer Lawrence, and Officer Alvarado-Cruz in that order.

## A

Detective Wallace argues he is entitled to qualified immunity for arresting Brown and for instructing Officer Alvarado-Cruz to conduct a strip and body cavity search of Brown while she was held at the Brave Cave.

---

[15] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

[16] *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).

[17] *Parker v. Blackwell*, 23 F.4th 517, 522 (5th Cir. 2022) (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)).

[18] *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024) (citing *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021)).

[19] *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

No. 25-30135

Detective Wallace contends he had probable cause for the arrest and that a post-arrest strip and body cavity search did not violate clearly established law.

"The Fourth Amendment protects against 'unreasonable searches and seizures.'"[20]  "The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment."[21]  "The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*," a "two-part . . . reasonable suspicion inquiry."[22]  Under that "inquiry, we ask whether the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'"[23]  "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle."[24]  In other words, "[r]easonable suspicion must exist *before* the initiation of an investigatory detention."[25]

"[I]n making a reasonable suspicion inquiry, a court 'must look at the totality of the circumstances of each case to see whether the detaining officer

---

[20] *United States v. Martinez*, 102 F.4th 677, 683 (5th Cir. 2024) (quoting U.S. Const. amend. IV).

[21] *Id.* (quoting *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc)).

[22] *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005); *see Terry v. Ohio*, 392 U.S. 1 (1968).

[23] *Lopez-Moreno*, 420 F.3d at 430 (quoting *Terry*, 392 U.S. at 20).

[24] *Id.*

[25] *United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020) (citing *United States v. Monsivais*, 848 F.3d 353, 359 (5th Cir. 2017)).

has a particularized and objective basis for suspecting legal wrongdoing.'"[26] "We have stated previously that reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure."[27]

"Warrantless searches and seizures are 'per se unreasonable unless they fall within a few narrowly defined exceptions.'"[28] Among those exceptions is the automobile exception.[29] Under that exception, "warrantless searches of automobiles are permitted by the Fourth Amendment if the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime."[30] Still, "whether the initial stop was permissible under the Fourth Amendment" is a "threshold matter."[31]

Additionally, "[i]t is well established that under the Fourth Amendment a warrantless arrest must be based on probable cause."[32] "Probable cause justifying an arrest 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or

---

[26] *Lopez-Moreno*, 420 F.3d at 430 (internal quotation marks omitted) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

[27] *Id.*

[28] *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002) (quoting *United States v. Roberts*, 274 F.3d 1007, 1011 (5th Cir. 2001)).

[29] *Rountree v. Lopinto*, 976 F.3d 606, 609 (5th Cir. 2020).

[30] *Degenhardt v. Bintliff*, 117 F.4th 747, 755 (5th Cir. 2024) (quoting *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995)).

[31] *United States v. Castelo*, 415 F.3d 407, 409 (5th Cir. 2005).

[32] *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013) (quoting *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc)).

No. 25-30135

one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"[33]

When "qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify."[34] "[F]acts crucial to the resolution of the qualified immunity issue remain unknown at this juncture."[35] "A seizure must be 'justified at its inception'"—"[r]easonable suspicion must exist *before* the initiation of an investigatory detention"[36]—and an officer must have "probable cause" before an officer may search a vehicle without a warrant.[37] Brown's allegations "fail to state"[38] why Detective Wallace elected to pull over the vehicle and order Brown and her husband out of the vehicle,[39] why Detective

---

[33] *Id.* (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

[34] *Hobbs v. Warren*, 838 F. App'x 881, 882 (5th Cir. 2021) (unpublished) (quoting *Pearson v. Callahan*, 555 U.S. 223, 238-39 (2009)).

[35] *Id.*

[36] *United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020) (quoting *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 185 (2004)).

[37] *Ornelas v. United States*, 517 U.S. 690, 693 (1996); *see Rountree v. Lopinto*, 976 F.3d 606, 609 (5th Cir. 2020).

[38] *Morgan v. Hubert*, 335 F. App'x 466, 472 (5th Cir. 2009) (unpublished).

[39] *See United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc) (explaining that "[t]he stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment" and that "routine traffic stops" must be "justified by probable cause or a reasonable suspicion of a violation"); *see also Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) ("Under the Fourth Amendment . . . a policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.'" (footnote omitted) (quoting *United States v. Brignoni–Ponce*, 422 U.S. 873, 881 (1975))); *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (explaining that "[i]n *Mimms*, the Court held that 'once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment[]'" (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977))). Wallace's

11

No. 25-30135

Wallace searched the vehicle, and why Detective Wallace searched her purse containing the drugs and gun that led to her arrest and subsequent strip and body cavity search.[40] We accordingly find ourselves "in the difficult position of having to determine whether [Detective Wallace's] conduct was objectively reasonable without the facts typically relied upon to do so."[41] Facts may exist regarding the knowledge of Detective Wallace that support his claim of qualified immunity.[42]    However, given that only Brown's

-----

brief in support of his motion to dismiss acknowledged that the Complaint did not disclose the reasons for the stop and stated that it was because of "illegal tint and a computer check indicating lapsed auto insurance." *But see Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (stating that "a court ruling on a motion to dismiss . . . reviews only the well-pleaded facts in the complaint" and "it may not consider new factual allegations made outside the complaint, including those made on appeal"); *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (stating that under the 12(b)(6) standard, this court "generally confine[s] [its] analysis to the complaint and its proper attachments"); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (stating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim" (alteration in original) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993))).

[40] *See Degenhardt v. Bintliff*, 117 F.4th 747, 755-56 (5th Cir. 2024) (noting that warrantless searches of automobiles are permitted if officers have probable cause to believe the vehicle has contraband or evidence of a crime and affirming the district court's dismissal of an unreasonable search of a vehicle claim when the complaint stated that "alcoholic beverages were in plain view of the officers *before* they opened the door of the vehicle"); *see also New York v. Belton*, 453 U.S. 454, 460 (1981) (holding that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile . . . [and] examine the contents of any containers found within the passenger compartment" (footnote omitted)).

[41] *Hobbs v. Warren*, 838 F. App'x 881, 883 (5th Cir. 2021) (unpublished).

[42] *See United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) ("[R]easonable suspicion exists when *the officer* can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." (emphasis added)); *see also Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013) (noting that an officer has probable cause for an arrest when the facts and

complaint is before us, we affirm the district court's denial of qualified immunity at this stage of the litigation. On remand, discovery should be limited to the issue of qualified immunity, and further proceedings should resolve that issue before general discovery or trial occur.

**B**

Officer Lawrence argues he is entitled to qualified immunity because he was not personally involved in any alleged violation of Brown's constitutional rights. He states that at "best . . . [he] handcuffed [Brown], ordered [Brown] to stand beside his vehicle, and instructed [Brown] to get into the vehicle being driven by Officer Doe." But as we recognized above, "[t]he stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment,"[43] warrantless searches of automobiles are allowed under the Fourth Amendment when "the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime,"[44] and "a warrantless arrest must be based on probable cause."[45] Officer Lawrence admits the Complaint alleges that he was personally involved in the handcuffing and detention of Brown while Detective Wallace searched the vehicle and that he "instructed [Brown] to get into the vehicle being driven [to the Brave Cave] by Officer Doe." As with Detective Wallace's claim of qualified immunity, we find ourselves "in

---

circumstances within the officer's knowledge would cause a person of reasonable caution to believe that a suspect has committed, is committing, or is about to commit an offense).

[43] *United States v. Martinez*, 102 F.4th 677, 683 (5th Cir. 2024) (quoting *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc)).

[44] *Degenhardt*, 117 F.4th at 755 (quoting *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995)).

[45] *Hogan*, 722 F.3d at 731 (quoting *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc)).

No. 25-30135

the difficult position of having to determine whether [Officer Lawrence's] conduct was objectively reasonable without the facts typically relied upon to do so."[46]    We therefore affirm the district court's denial of qualified immunity as to Officer Lawrence, but proceedings on remand should first resolve the qualified immunity issue.[47]

## C

Officer Alvarado-Cruz contends she is entitled to qualified immunity because the law governing strip and body cavity searches of arrestees was not clearly established as to the particular level of suspicion required at the time she conducted the strip and body cavity search of Brown.  She also contends that conducting the strip and body cavity search was objectively reasonable because "she was following the directives [of] senior officers," who had reasonable suspicion, and BRPD policy required Brown's strip and body cavity search to "be conducted by an officer of the same sex as the arrestee." She argues that, under the collective knowledge doctrine, she was entitled to rely on Detective Wallace and Officer Lawrence's "reasonable suspicion" in carrying out the "ordered search."

## 1

"In determining what constitutes clearly established law, this [court] first looks to Supreme Court precedent and then to [its] own."[48]  "When there is no direct controlling authority, 'this [court] may rely on decisions from other circuits to the extent that they constitute a robust consensus of

---

[46] *Hobbs v. Warren*, 838 F. App'x 881, 883 (5th Cir. 2021) (unpublished).

[47] *See Morgan v. Hubert*, 335 F. App'x 466, 473 (5th Cir. 2009) (unpublished).

[48] *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022) (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)).

14

cases of persuasive authority.'"[49]   "Ultimately, the touchstone is fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the [c]ourt, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."[50] In other words, we do "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."[51]  In addition, the Supreme Court has instructed us "not to define clearly established law at a high level of generality,"[52] but to undertake this inquiry "in light of the specific context of the case."[53]

Furthermore, a "Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'"[54]  At the motion to dismiss stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness."[55]  "[T]he question is whether the officer's actions are 'objectively reasonable' in light of the facts and

---

[49] *Id.* (quoting *Shumpert*, 905 F.3d at 320).

[50] *Id.* (internal quotation marks omitted) (quoting *Shumpert*, 905 F.3d at 321).

[51] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

[52] *Id.* at 742.

[53] *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

[54] *al-Kidd*, 563 U.S. at 741 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[55] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (internal quotation marks omitted) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

circumstances confronting them, without regard to their underlying intent or motivation."[56]

**2**

In *Florence v. Board of Chosen Freeholders*,[57] the Supreme Court held constitutional routine intake searches (i.e., suspicionless searches) of detainees prior to being released into the "general population," "regardless of the circumstances of the [detainee's] arrest."[58] As relevant here, part of the intake searches at issue included an officer looking at the detainee's "body openings," and requiring the detainee to "lift his genitals, turn around, and cough in a squatting position."[59] The Court expressly reserved, however, what types of searches "would be reasonable" when "a detainee [is] held without assignment to the general jail population and without substantial contact with other detainees."[60] The Court explained that the "circumstances before the Court . . . [did] not present the opportunity to consider . . . whether an arrestee whose detention has not yet been reviewed by a magistrate or other judicial officer, and who can be held in available facilities removed from the general population, may be subjected to the types

---

[56] *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

[57] 566 U.S. 318 (2012).

[58] *Id.* at 324, 334, 339.

[59] *Id.* at 324.

[60] *Id.* at 338-39.

of searches at issue" in that case.[61]  Here, Brown was not released into the general population.

To be sure, "*Florence* abrogated some . . . decisions to the extent they required that persons arrested on minor offenses be excepted from blanket strip searches even when they were entering a general prison population." [62] However, "*Florence* did not . . . disturb recognized Fourth Amendment restrictions against such searches of persons held apart from the general prison population."[63]

In *Kelly v. Foti*,[64] this court held that jail officials may "strip and cavity search" "a person arrested for a minor offense and detained pending the posting of bond *only if* they possess a reasonable suspicion that [the arrestee] is *hiding* weapons or contraband."[65] In *Stewart v. Lubbock County*,[66] this court held unconstitutional a department policy permitting strip searches of any arrestee, including minor offenders awaiting bond, when "no reasonable suspicion existed that they . . . might possess weapons or contraband," and explained that officers must have reasonable suspicion that an individual might possess weapons or contraband to conduct a strip search.[67]    In

---

[61] *Id.* at 339.

[62] *Johnson v. Gov't of D.C.*, No. 11-5115, 2014 WL 12579819, at *4 (D.C. Cir. Aug. 1, 2014) (PILLARD, J., concurring in the denial of rehearing en banc).

[63] *Id.*

[64] 77 F.3d 819 (5th Cir. 1996).

[65] *Id.* at 820-21 (emphasis added); *see id.* at 820-22 (confirming the principle that a "strip and cavity search" "is permissible only if the official has an *individualized* suspicion that the arrestee is hiding weapons or contraband").

[66] 767 F.2d 153 (5th Cir. 1985).

[67] *Id.* at 156-57.

*Williams v. Kaufman County*,[68] this court described its previous holdings that officers must have reasonable suspicion to strip search individuals who have committed minor offenses "in custodial situations" and that "outside the prison context" officers need at least individualized reasonable suspicion to conduct a strip search.[69] In *Jimenez v. Wood County*,[70] our en banc court acknowledged that "longstanding precedent" requires reasonable suspicion to conduct strip searches of individuals who were arrested for minor offenses for weapons or contraband.[71]

At least four other circuits have required a more particularized suspicion that contraband is concealed for an officer to lawfully conduct a body cavity search. The First Circuit in *United States v. Barnes*[72] concluded that there must be "a more particularized suspicion that contraband is *concealed*" prior to conducting a visual body cavity search of the defendant, even though the "initial strip search" of the defendant "was clearly justified given [his] arrest for a drug trafficking crime."[73] The Second Circuit in *Sloley v. VanBramer*[74] held that "a visual body cavity search conducted as an incident to a lawful arrest for any offense must be supported by 'a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity.'"[75] The Seventh Circuit in

---

[68] 352 F.3d 994 (5th Cir. 2003).

[69] *Id.* at 1005-07.

[70] 660 F.3d 841 (5th Cir. 2011) (en banc).

[71] *Id.* at 844, 847.

[72] 506 F.3d 58 (1st Cir. 2007).

[73] *Id.* at 62 (emphasis added).

[74] 945 F.3d 30 (2d Cir. 2019).

[75] *Id.* at 38 (quoting *People v. Hall*, 886 N.E.2d 162, 168 (N.Y. 2008)).

*Campbell v. Miller*[76] held "that the police needed to have a reasonable suspicion that [the arrestee] was concealing contraband in order to justify the [strip and body cavity] search under . . . [the Supreme Court's decision in] *Robinson*."[77]    The Ninth Circuit stated in *United States v. Mendez-Jimenez*[78] that "[a] clear indication or plain suggestion that the suspect is concealing contraband *within his body* is required before a search beyond the body's surface may be authorized."[79]

In other words, both our precedent and "a robust consensus of cases of persuasive authority"[80] require an officer to have at least a reasonable suspicion that an arrestee not being released into the general population is hiding or concealing weapons or contraband before subjecting the arrestee to a strip and body cavity search.[81]   We therefore conclude that it is clearly established that, at a minimum, Officer Alvarado-Cruz needed reasonable suspicion that Brown was hiding or concealing weapons or contraband in a body cavity to justify her search of Brown's vagina and buttocks.

**3**

Brown alleged in her complaint that Detective Wallace found "several bottles of prescription medication," including one that contained "multiple prescriptions in the same bottle," along with a "firearm."  Brown also alleged that Detective Wallace informed Brown that he suspected she could have

---

[76] 499 F.3d 711 (7th Cir. 2007).

[77] *Id.* at 717; *see United States v. Robinson*, 414 U.S. 218, 234 (1973).

[78] 709 F.2d 1300 (9th Cir. 1983).

[79] *Id.* at 1302 (emphasis added).

[80] *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022) (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)).

[81] *See supra* notes 64-79 and accompanying text.

"bought [the pills] off the streets," and that she was transported to the Brave Cave due to the officers' suspicions that she was "involved in illegal drug activity." Brown stated that Officer Alvarado-Cruz conducted the strip and body cavity search "[a]t the request of Wallace and Lawrence," and that after the officers were "satisfied that [she] was not hiding a weapon or contraband in her [body cavities], she was released from [the Brave Cave] without charge."

"Under the collective knowledge doctrine, an officer initiating the stop or conducting the [strip and body cavity] search need not have personal knowledge of the evidence that gave rise to the reasonable suspicion or probable cause, so long as he is acting at the request of those who have the necessary information."[82] "In other words, the collective knowledge theory applies so long as there is 'some degree of communication' between the acting officer and the officer who has knowledge of the necessary facts."[83]

Officer Alvarado-Cruz was "acting at the request of" Detective Wallace and Officer Lawrence, "those who [had] the necessary information."[84] Therefore, under the collective knowledge doctrine, Detective Wallace and Officer Lawrence's knowledge and observations may be imputed to Officer Alvarado-Cruz.[85] However, the collective knowledge doctrine does not apply to Officer Alvarado-Cruz until a "reasonable

---

[82] *United States v. Zuniga*, 860 F.3d 276, 283 (5th Cir. 2017).

[83] *Id.* (quoting *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007)).

[84] *Id.*

[85] *See United States v. Ibarra-Sanchez*, 199 F.3d 753, 759-60 (5th Cir. 1999).

suspicion that could have been transferred between" she, Detective Lawrence, and Officer Wallace existed.[86]

The complaint is devoid of factual allegations suggesting Detective Wallace and Officer Lawrence had reason to believe Brown was hiding contraband or a weapon in her body cavities. In Officer Alvarado-Cruz's motion to dismiss before the district court, she argued that "combining pills in the same container was . . . 'suspicious,' and, because of [that] suspicious behavior, BRPD officers required [Brown] to undergo a visual strip and body cavity search 'to show that she was not hiding contraband.'" Although "narcotics violation[s]" are "the kinds of crimes . . . that might give rise to a reasonable belief that [an] arrestee was concealing an item in a body cavity,"[87]

---

[86] *United States v. Alvarez*, 40 F.4th 339, 352 (5th Cir. 2022); *see id.* ("We do not blindly accept officers' reliance on information obtained through police channels; the government must substantiate the basis of the information."); *Ibarra*, 493 F.3d at 531 (affirming the district court's probable cause finding and concluding that "knowledge of probable cause can be imputed . . . under the collective knowledge doctrine"); *Zuniga*, 860 F.3d at 283 (rejecting the appellant's argument that "the officers failed to establish any reasonable suspicion that could be transferred," and holding that the "suspicion transferred by the law enforcement agents who observed [the appellant's] traffic violation suffice[d]"); *Ibarra-Sanchez*, 199 F.3d at 759 ("[I]f [DEA Special Agent] Mattas possessed sufficient reasonable suspicion to stop the van when he made his call to the dispatcher, then the actual stop by the . . . officers, acting on the dispatcher's bulletin, was also supported by reasonable suspicion."); *United States v. Vasquez*, 534 F.2d 1142, 1145 (5th Cir. 1976) ("[I]f Customs Patrol officers . . . possessed sufficient factual information to support a determination of probable cause to arrest and detain, then the actual arrest and detention one hour later by . . . police officers acting on the information relayed by Communications Sector was supported similarly by probable cause."); *see also United States v. Patiutka*, 804 F.3d 684, 691 (4th Cir. 2015) ("[T]he instructing officer alone must have sufficient information to justify an arrest or search in order for the acting officer to benefit from the collective-knowledge doctrine."); *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010) ("In order for the collective knowledge doctrine to apply . . . the officer providing the information . . . must have facts supporting the level of suspicion required.").

[87] *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1273 (7th Cir. 1983); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013) ("Although we have repeatedly held that the police may not conduct a suspicionless strip or body cavity search

No. 25-30135

we are unable to determine on this record whether Detective Lawrence and Officer Wallace had a "particularized and objective basis" to support such a belief.[88]  As with Detective Lawrence and Officer Wallace, we find ourselves "in the difficult position of having to determine whether [Officer Alvarado-Cruz's] conduct was objectively reasonable without the facts typically relied upon to do so."[89]  We therefore affirm the district court's denial of qualified immunity as to Officer Alvarado-Cruz  and remand for discovery and further proceedings regarding that issue.[90]  We do not reach whether the strip and body cavity search conducted by Alvarado-Cruz was objectively reasonable.[91]

\*         \*         \*

---

of a person arrested for a misdemeanor, reasonable officers could disagree as to whether that rule applied to those arrested for felony drug crimes, given the propensity of drug dealers to conceal contraband in their body cavities."); *United States v. Draper*, No. 5:22-cr-0386, 2023 WL 3726506, at \*9 (E.D. Pa. May 30, 2023) ("[I]t is common for individuals dealing in illegal drugs to hide drugs on their person."). *But see United States v. Barnes*, 506 F.3d 58, 62 (1st Cir. 2007) ("The evidence before [the officer]—that [the defendant] was a suspected drug dealer in possession of narcotics and that some drug dealers conceal drugs between their buttocks—did not endow him with an individualized suspicion that [the defendant] was 'cheeking' drugs.").

[88] *See United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

[89] *Hobbs v. Warren*, 838 F. App'x 881, 883 (5th Cir. 2021) (unpublished).

[90] *See Morgan v. Hubert*, 335 F. App'x 466, 473 (5th Cir. 2009) (unpublished).

[91] *See Stewart v. Lubbock County,* 767 F.2d 153, 155-57 (5th Cir. 1985) (applying the Supreme Court's four-factor reasonableness test from *Wolfish* to a department's policy permitting strip searches); *Mabry v. Lee County*, 849 F.3d 232, 235 (5th Cir. 2017) (applying *Wolfish* to address the reasonableness of a search at a correctional facility); *see also Swain v. Spinney*, 117 F.3d 1, 6 (1st Cir. 1997) ("A strip and visual body cavity search . . . requires independent analysis under the Fourth Amendment.  In [*Wolfish*], the Supreme Court noted that '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.'" (second alteration in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979))); *Logan v. Shealy*, 660 F.2d 1007, 1013 (4th Cir. 1981)

22

No. 25-30135

For the foregoing reasons, we AFFIRM the district court's denial of Detective Wallace, Officer Lawrence, and Officer Alvarado-Cruz's 12(b)(6) motions to dismiss on qualified immunity grounds and REMAND for discovery and further proceedings limited to the issue of Detective Wallace, Officer Lawrence, and Officer Alvarado-Cruz's qualified immunity before general discovery or trial proceed.[92]

---

("Strip searches of detainees are constitutionally constrained by due process requirements of reasonableness under the circumstances.").

[92] *See Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (en banc) ("The district court . . . may limit any necessary discovery to the defense of qualified immunity. . . . Even if such limited discovery is allowed, at its end, the court can again determine whether the case can proceed and consider any motions for summary judgment under Rule 56."); *Wertenbroch v. Hardeman*, 178 F.4th 186, 192 (5th Cir. 2026) ("[I]f qualified immunity is denied because there is a need for clarification of the facts, the district court may . . . order limited discovery that is 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'" (quoting *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022))); *Asante-Chioke v. Dowdle*, 103 F.4th 1126, 1132 (5th Cir. 2024) (remanding and directing the district court to "limit discovery to uncover only the facts necessary to rule on qualified immunity").